UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRASHARD DELANEY,

                    Plaintiff,                              Case No. 2:24-cv-194

v.                                                          Honorable Ray Kent

UNKNOWN WALTANEN et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21.

Applying these standards, the Court will drop Defendants Schroeder, Olivier-Moyale, James, Bolton, Prusi, Hemmila, Van Acker, Hoult, Leach, Sebaly, Allen, John Doe #5, Howie, John Doe Sgt. #1, John Doe #7, Corrections Officer Matt, Corrections Officer Harry, Vrakal, Bomer, Nurkula, Miller, and Fraki as misjoined and dismiss Plaintiff's claims against these Defendants without prejudice. The Court will also partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>Discussion</u>

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility and at the Baraga Correctional Facility (AMF), in Baraga, Baraga County, Michigan.

A.    **Plaintiff's Initial Complaint**

On November 13, 2024, the Court received a document from Plaintiff titled, "affidavit," along with a motion seeking preliminary injunctive relief (ECF No. 1.) The Court docketed the documents as Plaintiff's complaint. In Plaintiff's complaint, he avers that, on August 30, 2024, at approximately 9:43 a.m. he was involved in an incident with Corrections Officer Waltanen. (ECF No. 1, PageID.3.) Corrections Officer Waltanen, without warning, "tasered" Plaintiff in the back from about six feet away. (*Id*.) Defendant Waltanen then ran to Plaintiff and pounced on him. (*Id*.) Defendant Waltanen kneed Plaintiff in his side repeatedly, punched Plaintiff with a closed fist "all over his head and neck area," and grabbed hold of Plaintiff's hair and pounded his head into the floor. (*Id*.) Defendant Waltanen shouted that he intended to kill Plaintiff.

Corrections Officer Loonsfoot, Sergeant Cordono, and unidentified others then "shot" Plaintiff twice more in the back while he was restrained on his stomach. (*Id*.) An unknown corrections officer then maced Plaintiff, emptying the mace can. (*Id*.) Thereafter, unidentified corrections officers placed their full body weight on Plaintiff's back, buttocks, and chest until Plaintiff yelled, "I can't breathe." (*Id*.) Plaintiff temporarily blacked out. (*Id*.)

Plaintiff was placed in a restraint chair and taken to a dark healthcare room. (*Id*., PageID.4.) All but one of the officers left. (*Id*.) The remaining officer, "an older white guy wearing an M.D.O.C. ball cap with [a] gray m[o]ustache," repeatedly punched Plaintiff in his face with a

closed fist and tightly yanked and pulled Plaintiff's penis while the officer made sexually aggressive remarks. (*Id*.) The officer also told Plaintiff how much "they" planned to rough up Plaintiff. (*Id*.)

Assistant Resident Unit Supervisor Walowski abruptly entered the room with a video recorder, ruining the officer's expressed plans to assault Plaintiff. (*Id*.) Plaintiff was then "emergency transferred" to MBP. (*Id*.)

On September 30, 2024, Plaintiff filed a grievance. (*Id*.) He addressed it to Inspector Mike Leach and turned it over to Resident Unit Manager Olivier. (*Id*.) Plaintiff never received a receipt or acknowledgment that the grievance was processed. (*Id*.)

Plaintiff reports he also filed a grievance on September 19, 2024. (*Id*.) He turned that grievance over to ARUS Olivier addressed to Grievance Coordinator Quentin Bolton. (*Id*.) Plaintiff never received a receipt or acknowledgment. (*Id*.)

On September 23, 2024, Plaintiff filed another grievance. (*Id*., PageID.5.) This time he sent it to the Corrections Ombudsman. (*Id*.) Plaintiff asked the ombudsman to forward the grievance to AMF because he could not get a response from MBP. (*Id*.)

Plaintiff indicates that he attached all three grievances to his submission to this Court; but he did not.

Plaintiff's initial submission then shifts from factual allegations to legal arguments and conclusions. (*Id*., PageID.5–6, ¶¶ 18–23.) Thereafter, Plaintiff asks the Court to order: (1) MDOC personnel at MBP and AMF to comply with their own policies regarding grievances; (2) the MDOC to cease violating Plaintiff's Fourteenth Amendment rights to equal protection under the law; and (3) to cease violating Plaintiff's First Amendment right to access the courts. (*Id*., PageID.6–7, ¶¶ 24–25.)

### B.    Plaintiff's First Amended Complaint

On November 22, 2024, the Court received Plaintiff's first amended complaint, which he was entitled to file as of right under Federal Rule of Civil Procedure 15(a). Plaintiff's amended complaint greatly expands upon the allegations in his initial submission.[2] The first four pages of Plaintiff's factual allegations recount the events of August 30, 2024—Plaintiff's last day at AMF. (First Am. Compl., ECF No. 3, PageID.22–25.) The next nine pages of the factual allegations recount the events that night and in the days that followed while Plaintiff was housed at MBP. (*Id.*, PageID.26–34.) Plaintiff then proceeds to set out, Defendant by Defendant, the specific causes of action that he raises against each Defendant. (*Id.*, PageID.35–38.)

Plaintiff attaches to his complaint several documents: several copies of Step I grievances that Plaintiff filed while he was at MBP—grievances that were never addressed by Defendants, (ECF Nos. 3-2 through 3-10); one grievance that Plaintiff filed after his transfer to MBP that was processed, (ECF Nos. 3-11, 3-12); and a document that purports to be an affidavit and/or an unsworn declaration of AMF prisoner Joseph Gonzales, (ECF No. 3-13).[3]

---

[2] Plaintiff's first amended complaint also drops two defendants: AMF Warden Terry Wilkins and Inspector Unknown Minerick.

[3] The Sixth Circuit Court of Appeals recently reiterated that a court may consider documents attached to a complaint when determining whether the pleadings are sufficient:

> The court may consider "documents attached to the pleadings," documents that are "referred to in the pleadings and [are] integral to the claims," and "matters of public record" . . . . *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). And "[w]hen an exhibit contradicts the complaint, the exhibit trumps the allegations." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) (internal quotation marks and citation omitted); *accord Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020) ("[I]f the pleadings internally contradict verifiable facts central to a plaintiff's claims, that makes the plaintiff's allegations implausible." (cleaned up)).

*Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025).

Plaintiff asks the Court to enter judgment declaring that the acts and omissions of Defendants have violated Plaintiff's rights and stating the Defendants' duties with regard to Plaintiff's rights. (First Am. Compl., ECF No. 3, PageID.39.) Plaintiff also seeks compensatory damages in an amount of no less than $800,000.00. (*Id.*)

With respect to the allegations in the first amended complaint, in the first amended complaint Plaintiff repeats the allegations from his initial complaint with regard to Plaintiff's initial confrontation with Defendant Waltanen on August 30, 2024. (*Id.*, PageID.22–23, ¶¶ 1–6.) Plaintiff designates the unknown officer who sprayed the entire can of mace in Plaintiff's face, eyes, and hair as John Doe #1. (*Id.*, PageID.22, ¶ 5.) He identifies the older man with the grey beard wearing an MDOC ball cap as John Doe #2. (*Id.*, PageID.23, ¶ 6.)

Plaintiff notes that the persons who placed Plaintiff in the restraint chair and led him to Unit 2 segregation were Defendants Loonesfoot, Cordono, and John Doe #2. (*Id.*) Plaintiff again notes that Defendants Loonesfoot and Cordono left the room. (*Id.* ¶ 7.) Then John Doe #2 began punching Plaintiff in the jaw, advising Plaintiff that "we're going to f****** kill you." (*Id.* (asterisks added).) Notably, Plaintiff abandons his prior allegations that this defendant pulled Plaintiff's penis and made sexually aggressive remarks.

After John Doe #2 hit Plaintiff three times, non-party ARUS Walowski entered the room with a camera and the beating ended. (*Id.*) Non-party Nurse Skinnerup entered the room behind Walowski and removed the taser prongs from Plaintiff's back. (*Id.* ¶ 8.) That is the point at which Plaintiff's initial complaint shifts from events at AMF to events at MBP. In the first amended complaint, however, Plaintiff makes additional allegations regarding his time at AMF. Plaintiff alleges that he was put back in the restraint chair and led to A-wing cell #115. (*Id.* ¶ 9.) The cell

was filthy, with feces clogged in the toilet, and smelled awful. (*Id*.) The cell did not have soap or towels. (*Id*.)

Defendant Herbert made rounds in the unit. (*Id*. ¶ 10.) Plaintiff advised Defendant Herbert that Plaintiff needed soap and towels because the mace had Plaintiff's "entire body on fire." (*Id*.) Defendant Herbert told Plaintiff that Defendant Herbert would not provide Plaintiff with anything. (*Id*.)

Thirty minutes later, Defendant Beck made rounds. (*Id*.) Plaintiff also told Defendant Beck that Plaintiff needed soap, towels, and a shower because of the mace. (*Id*.) Defendant Beck advised Plaintiff that because of Plaintiff's assault he was going to have to go through "a couple days of bull s***" but, thereafter, "things will go back to normal." (*Id*., PageID. 23–24, ¶ 10 (asterisks added).) Plaintiff also asked Defendant Beck for food noting that Plaintiff was diabetic. (*Id*., PageID.24, ¶ 11.) Defendant Beck offered the following response: "We'll see." (*Id*.)

Plaintiff began trying to remove the mace from his hair. (*Id*. ¶ 13.) Plaintiff told Defendants Beck and Herbert that Plaintiff needed healthcare because the mace was causing asthma attacks. (*Id*.) Plaintiff's request for help was ignored. (*Id*.)

At 11:00 a.m., Defendants Beck and Herbert passed out lunch trays. (*Id*. ¶ 14.) Defendant Herbert advised Plaintiff that he would not be eating. (*Id*.) Plaintiff advised Defendant Herbert that his blood sugar was low and that Plaintiff had to eat. (*Id*.) Plaintiff's request for help was ignored. (*Id*.)

Defendant Loonesfoot made a round. (*Id*. ¶ 16.) Plaintiff advised Defendant Loonesfoot that Defendant Herbert had not provided Plaintiff with food and that his blood sugar was low. (*Id*., PageID.24–25, ¶ 16.) Plaintiff also advised Defendant Loonesfoot that Plaintiff needed soap and a shower to clean off the mace that was causing asthma attacks. (*Id*., PageID.25, ¶ 16.)

Between 4:30 p.m. and 5:00 p.m., an unknown corrections officer with a long ponytail and facial hair—identified by Plaintiff as John Doe #4—refused to feed Plaintiff dinner. (*Id*. ¶ 18.) Defendant John Doe #4 advised Plaintiff that he was about to "ride-out" and that his new facility would feed him. (*Id*.) Plaintiff complained that his blood sugar was low and he felt dizzy. Defendant John Doe #4 told Plaintiff to "stop assaulting officers [and] you'll eat all your trays." (*Id*.)

Plaintiff was in cell #115 from 10:00 a.m. to 8:30 p.m. without food, soap, towels, a shower, or treatment for his asthma attacks. (*Id*., ¶ 20.) At 8:30 p.m., transportation officers arrived to transport Plaintiff to MBP. (*Id*.)

Plaintiff notes that Defendant Fraki packed Plaintiff's property at approximately 1:45 p.m. that day and scratched the serial number off of Plaintiff's television and destroyed Plaintiff JP6 music player and books valued at over $1,000.00. (*Id*., ¶ 21.)

The remainder of Plaintiff's factual and "cause of action" allegations—(*Id*., PageID.25–37, ¶¶ 22–50, "Cause of Action" 1–18)—relate to: (1) violations committed at MBP by MBP personnel; or (2) retaliatory conduct by AMF Defendant Nurkala that occurred two months after the events of August 30, 2024, and were allegedly motivated by an alleged attack by Plaintiff against Defendant Nurkala during 2022, when both parties were at MBP.

Specifically, Plaintiff complains that while he was at MBP, healthcare staff and corrections officers failed to properly treat Plaintiff's diabetes. (*Id*., PageID.25–28, ¶¶ 22–28, 30–32.) Plaintiff also claims that MBP corrections officers used excessive force against him (*id*., PageID.26–30, ¶¶ 26–29, 35, 37), that MBP personnel failed to properly process Plaintiff's grievances (*id*., PageID.28, 30–33, ¶¶33–34, 38–47), that MBP personnel wrote misconduct reports against Plaintiff (*id*., PageID.29, ¶ 36), and that the MBP librarian failed to provide Plaintiff with requested

library materials or make requested copies. (*Id.*, PageID.34, ¶ 48.) Plaintiff does not connect the events at AMF to the events at MBP except to suggest that the MBP Defendants violated Plaintiff's rights in retaliation for Plaintiff alleged assaults of Defendants Waltanen and Nurkala.

Plaintiff has also filed a motion to amend his first amended complaint, and he has filed several "supplements." (ECF Nos. 7–14.) The Court will address the motion to amend and supplements below.

## II.    Misjoinder

 Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*,

No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]

but also to ensure that prisoners pay the required filing fees—for the Prison
Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any
prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

A buckshot complaint that would be rejected if filed by a free person—say, a suit
complaining that A defrauded the plaintiff, B defamed him, C punched him, D
failed to pay a debt, and E infringed his copyright, all in different transactions—
should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and

Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions

and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to

reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Waltanen is the first party mentioned in the caption of Plaintiff's initial

pleading (Compl., ECF No. 1, PageID.1), and in Plaintiff's factual allegations (*id.*, PageID.3).[4]

Plaintiff alleges that Defendant Waltanen tasered Plaintiff in the back without provocation. (*Id.*)

Defendant Waltanen is also the first party mentioned in the caption of the first amended complaint,

(First Am. Compl., ECF No. 3, PageID.15), and the first party mentioned in Plaintiff's first

amended complaint factual allegations (*id.*, PageID.22, ¶ 2).

---

[4] The analysis of joinder must start somewhere. By accepting the first-mentioned Defendant and
the factual allegations against the first-mentioned Defendant as the foundation for the joinder
analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his
complaint.

Considering first whether other Defendants are properly joined under Rule 20, the Court must determine whether one claim against each additional defendant is transactionally related to the claim against Defendant Waltanen and involves a common question of law or fact. The Court concludes that Plaintiff's claims regarding the use of excessive force on Plaintiff in C-wing of unit 5 on the morning of August 30, 2024—as described in paragraphs 1 through 8 of the first amended complaint—are transactionally related to Plaintiff's claim against Defendant Waltanen for the use of excessive force and involve common questions of law and fact. The alleged uses of excessive force were proximate in time and location and, for all intents and purposes, were part of the same incident. Thus, Plaintiff's claims against Defendants Loonesfoot, Cordono, John Doe #1 and John Doe #2 are properly joined to Plaintiff's claim against Defendant Waltanen.

Moreover, Plaintiff's claims regarding the conditions of his confinement in segregation immediately following the incident—as described in paragraphs 9 through 20 of the first amended complaint—are also proximate in time and location to his excessive use of force claims. Although Plaintiff's "conditions of confinement" claims are not part of the same incident as his "use of excessive force" claims, based on Plaintiff's allegations, the Court concludes that they are sufficiently transactionally related to permit joinder. Accordingly, Plaintiff's claims against Defendant Beck, Herbert, Loonesfoot, and John Doe #4 regarding their treatment of Plaintiff in segregation after the excessive use of force incident are also properly joined.

Turning then to Rule 18, Plaintiff could join to his "excessive force" and "conditions of confinement" claims against Waltanen, Loonesfoot, Cordono, John Doe #1, John Doe #2, Beck, Herbert, and John Doe #4, Plaintiff's other claims against those Defendants. For example, Plaintiff contends that Defendant Waltanen is liable for First Amendment retaliation in addition to the use of excessive force. (First Am. Compl., ECF No. 3, PageID.37, ¶ 19.) Plaintiff claims that

Defendant Loonesfoot is liable for First Amendment retaliation in addition to the excessive force and conditions of confinement claims. (*Id*. ¶ 20.) Defendant Cordono, Plaintiff states, is liable for failure to supervise, in addition to the excessive force violation. (*Id*. ¶ 21.) Plaintiff also claims that Defendant Beck is liable for the state law tort of intentional infliction of emotional distress, in addition to the "conditions of confinement" claim. (*Id*. ¶ 22.) Defendant Herbert, according to Plaintiff, is also liable for the state law tort as well as First Amendment retaliation. (*Id*., ¶ 23.) Finally, Plaintiff alleges that Defendants John Doe #2 and John Doe #4 are liable for First Amendment retaliation in addition to their respective Eighth Amendment violations. (*Id*. ¶¶ 25, 26.) Plaintiff does not allege that Defendant John Doe #1 is liable for any claim in addition to the excessive force claim. (*Id*. ¶ 24.) Each of these additional claims against the properly joined Defendants is properly joined to this action under Rule 18. Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.").

Beyond those claims and parties, however, Plaintiff fails to allege facts that support finding a transactional relationship between Plaintiff's claims against Waltanen and his claims against the other Defendants. Plaintiff identifies two other Defendants from AMF: Defendant Fraki and Defendant Nurkala. Plaintiff contends that Defendant Fraki destroyed Plaintiff's personal property when Fraki was packing the property for transport. (First Am. Compl., PageID.25, ¶ 21.) Although Plaintiff reports his property was packed the same day that excessive force was used against him, he does not allege any facts that transactionally link the destruction of his property to the claims against the other properly joined Defendants.

On October 29, 2024—two months after the involvement of the other AMF Defendants—Defendant Nurkala purportedly plotted retaliation against Plaintiff because Plaintiff had attacked

Nurkala two years earlier when both were at MBP. (*Id*., PageID.33, ¶ 47.) Plaintiff alleges no facts that support finding a transactional relationship between Defendant Nurkala's actions on October 29, 2024, and the use of excessive force by Defendant Waltanen on August 30, 2024. Although both Defendants worked at AMF, the events that lie at the heart of Plaintiff's claims against them are not proximate in any other way.

Finally, Plaintiff raises a bevy of claims against Defendants from MBP. Those claims are not proximate in location or time and they do not involve the same participants. Additionally, with regard to the MBP Defendants, Plaintiff has failed to allege facts that support finding a transactional relationship between the claims against the MBP Defendants on the one hand and Defendant Waltanen on the other.

It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred during a particular 11-week period during his incarceration. However, such belief does not show that the claims arise out of the same transaction or occurrence. Accordingly, the Court concludes that Plaintiff's claims against Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, John Doe #2, Beck, Herbert, and John Doe #4 are properly joined, but that Plaintiff has improperly joined Defendants Schroeder, Olivier-Moyale, James, Bolton, Prusi, Hemmila, Van Acker, Hoult, Leach, Sebaly, Allen, John Doe #5, Howie, John Doe Sgt. #1, John Doe #7, Corrections Officer Matt, Corrections Officer Harry, Vrakal, Bomer, Nurkula, Miller, and Fraki.

Because the Court has concluded that Plaintiff has improperly joined Defendants Schroeder, Olivier-Moyale, James, Bolton, Prusi, Hemmila, Van Acker, Hoult, Leach, Sebaly, Allen, John Doe #5, Howie, John Doe Sgt. #1, John Doe #7, Corrections Officer Matt, Corrections Officer Harry, Vrakal, Bomer, Nurkula, Miller, and Fraki to this action, the Court must determine

an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*

*v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against these Defendants relate

to events on or after August 30, 2024. Plaintiff's complaint provides no indication that the statute

of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore,

Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if

his claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants

Schroeder, Olivier-Moyale, James, Bolton, Prusi, Hemmila, Van Acker, Hoult, Leach, Sebaly,

Allen, John Doe #5, Howie, John Doe Sgt. #1, John Doe #7, Corrections Officer Matt, Corrections

Officer Harry, Vrakal, Bomer, Nurkula, Miller, and Fraki, and dismiss Plaintiff's claims against

them without prejudice to the institution of a new, separate lawsuit or lawsuits.[5]

## III.    Supplements and Amendments

Plaintiff has filed multiple documents that purport to supplement his first amended

complaint. (ECF Nos. 7, 9, 10, 11, 12, 13, 14, 15, 18.) Supplemental pleadings are governed by

Federal Rule of Civil Procedure 15(d), which allows a court to permit a party to serve a

supplemental pleading "setting out any transaction, occurrence or event that happened after the

date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff may not supplement his

pleading "as of right;" he must seek leave of court by motion. Here, Plaintiff simply filed his

supplements. Therefore, the Court construes each filing as a motion to supplement.

---

[5] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does not mean that all claims arising out of these events are properly joined.

When a party moves for leave to supplement his pleadings under Rule 15(d), "the same standard of review and rationale apply" as a motion for leave to amend under Rule 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 182. If a claim is properly dismissed, amendment would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

The Court has reviewed all of Plaintiff's proposed supplements. The supplements all relate to the claims and Defendants that will be dismissed as misjoined.[6] Accordingly, the Court concludes that Plaintiff's proposed supplements would be futile. The Court will deny Plaintiff's requests to supplement his first amended complaint. The Clerk will be directed to strike Plaintiff's supplements (ECF Nos. 7, 9, 10, 11, 12, 13, 14, and 18) from the docket for this case.

Plaintiff also seeks leave to amend his complaint. (ECF No. 8.) Plaintiff seeks to amend his complaint because the address he provided for certain Defendants—coincidentally the eight properly joined Defendants—was incorrect. Plaintiff identified those eight Defendants as working at MBP when, in fact, they worked at AMF. (ECF No. 8, PageID.98–99.) Plaintiff's motion to

---

[6] The proposed supplement docketed as ECF No. 18, includes responses from civil rights organizations regarding unidentified incidents from August 30, 2024. It is possible that those incidents were from AMF rather than MBP. There is nothing in the responses that suggests they connect to the actions of the remaining AMF Defendants. Plaintiff included the exhibit because these particular mailings were given to another prisoner, not because the subject matter of the mailings relates to the allegations against the AMF Defendants in this case. (*See* ECF 18, PageID.180; *see also* Compl., *Delaney v. Schroeder*, No. 2:25-cv-75 (W.D. Mich.) (ECF No. 1).)

amend will be granted. Plaintiff need not file an amended complaint; instead, the Court will simply read Plaintiff's first amended complaint to include the AMF address as the Defendants' place of employment.

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

19

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in both their individual and official capacities. (ECF No. 3, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim for damages against Defendants in their official capacities upon which relief can be granted.

Plaintiff also seeks declaratory relief. (ECF No. 3, PageID.39.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered to have been done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer

21

confined at AMF, which is where he avers that Defendants are employed. Plaintiff's request for declaratory relief does not relate to an ongoing violation and is not prospective. Thus, he cannot maintain his claims for declaratory relief against Defendants in their official capacity.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities on which relief may be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Eighth Amendment

Plaintiff alleges two distinct Eighth Amendment claims: (1) claims regarding the use of excessive force—generally his claims against Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, and John Doe #2 relating to the force used on Plaintiff on August 30, 2024, from 9:45 a.m. until his arrival in cell #115 at around 10:00 a.m. (First Am. Compl., ECF No. 3, PageID.22–23 ¶¶ 1–9); and (2) claims against Defendants Loonesfoot, Herbert, Beck, and John Doe #4 regarding the conditions of his confinement and deprivations he suffered in cell #115 on the same day from approximately 10:00 a.m. until 8:30 p.m., when transport officers arrived to take Plaintiff to MBP (*Id.*, PageID.23–25 ¶¶ 9–20).

### 1.    Excessive Use of Force

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under

common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

23

Here, Plaintiff alleges that Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, and John Doe #2, each used excessive force against him on August 30, 2024, between 9:45 a.m. and 10:00 a.m., when Plaintiff was placed in cell #115.[7] Plaintiff describes the uses of force as entirely unprovoked, permitting the inference that the force used was excessive. Accordingly, on initial review, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, and John Doe #2, based on the August 30, 2024, incident described by Plaintiff as occurring between 9:45 a.m. and 10:00 a.m. at AMF.

### 2.    Conditions of Confinement

The Eighth Amendment also protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

---

[7] Plaintiff also lists "excessive force" as one of his claims against Defendant Herbert. (First Am. Compl., ECF No. 3, PageID.37 ¶ 23.) The Court has carefully reviewed Plaintiff's allegations. Plaintiff identifies his interactions with Defendant Herbert in paragraphs 9–17 of the first amended complaint. The Court can find no facts alleged that support an inference that Defendant Herbert used any force, much less excessive force, against Plaintiff. Accordingly, the Court concludes that Plaintiff has failed to state an excessive force claim against Defendant Herbert on which relief may be granted.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))). *See also Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy,

overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (flooded cell and inoperable toilet are temporary inconveniences); *see also Lamb*, 677 F. App'x at 209–10 (inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Edge v. Mahlman,* No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021) (noting that "[i]t is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme.").

### a.    Filthy Cell

Plaintiff reports that he was placed in cell #115. (First Am. Compl., ECF No. 3, PageID.23, ¶ 9.) Plaintiff alleges that the cell "was filthy with feces clogged in the toilet and smelled awful." (*Id*.) Plaintiff notes that there was no soap or towels inside the cell. (*Id*.) Plaintiff endured these conditions from 10:00 a.m. to 8:30 p.m.—ten and one-half hours. Plaintiff does not allege that he suffered any injury as a result of the filthy condition of his cell.

Allegations that a prisoner was consistently exposed to fecal matter for days are sufficient to state an Eighth Amendment claim. *Taylor*, 592 U.S. at 7–8 (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475 (6th Cir. 2012) (finding a question of fact as to the prisoner's Eighth Amendment claim where the prisoner alleged that he was confined to a cell covered in fecal matter for three days);

*DeSpain*, 264 F.3d at 974 (holding that exposure to non-working toilets and other inmates' urine and feces via standing water for thirty-six hours was sufficiently serious). However, the temporary exposure to human waste is not sufficiently serious so as to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result. *See Lamb*, 677 F. App'x at 209–10 (discussing that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (finding that a deplorably filthy and patently offensive cell with excrement and vomit was not unconstitutional because conditions lasted only for 24 hours).

Plaintiff's allegations regarding the condition of cell #115 fall short with regard to the objective prong. Accordingly, Plaintiff has failed to state a claim regarding the condition of his cell upon which relief may be granted.

### b.    Denial of Meals

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). Nonetheless, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x

448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Plaintiff's claim that Defendant Herbert and/or Defendant Beck denied Plaintiff lunch and that Defendant John Doe #4 denied Plaintiff dinner on one day[8] does not, on its face, appear to be the sort of extreme deprivation that satsifies the objective prong of the deliberate-indifference standard. Indeed, the Sixth Circuit has concluded that "the denial of a single meal, even taking into consideration [the plaintiff's] diabetes, is a de minimis event . . . ." *Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023). The Sixth Circuit noted further that the district court correctly held that "depriving a diabetic prisoner of one meal does not pose a substantial risk of harm absent evidence that the missed meal resulted in physical harm." *Id*. at *4. Because the prisoner-plaintiff in *Moore* did not show that he suffered physical harm or a need for medical attention, his claim fell short on the objective component. *Id*. at *3–4.

---

[8] When Defendant John Doe #4 did not provide Plaintiff his dinner, Defendant told Plaintiff that he would soon be transferred and that Plaintiff could be fed after his transfer. (First Am. Compl., ECF No. 3, PageID.25, ¶ 18.) When Plaintiff arrived at MBP, a nurse tested Plaintiff's blood sugar and instructed a sergeant to give Plaintiff a snack bag. (*Id*., PageID.25–26 ¶¶ 22–24.) Nonetheless, it appears that Plaintiff did not receive anything to eat until breakfast on August 31, 2024. (*Id*., PageID.28, ¶ 32.)

Plaintiff, however, notes that he was dizzy because of the missed meals and sought intervention by healthcare personnel. Because Plaintiff's allegations go beyond the insufficient allegations of the prisoner-plaintiff in *Moore*, the Court concludes that it cannot dismiss Plaintiff's claim at this preliminary stage.

### c.    Denial of Shower

Plaintiff claims he was denied soap, towels, and a shower during his stay in cell #115. Plaintiff does not claim that he was denied water, and he acknowledges that he made some attempt to clean the mace out of his hair, to no avail. Plaintiff sought assistance from Defendants Herbert, Beck, and Loonesfoot. Plaintiff advised each of those Defendants that he was having difficulty breathing because of the mace in his hair. (First Am. Compl., ECF No. 3, PageID.24–25 ¶¶13, 16.) Although Plaintiff has by no means proven his claim against these Defendants, at this time, the Court cannot dismiss Plaintiff's claim regarding the denial of a shower to remove the lingering effects of the chemical spray.

### d.    Denial of Medical Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

Plaintiff alleges that he suffered asthma attacks because of the mace in his hair. (First Am. Compl., ECF No. 3, PageID.24–25, ¶¶13, 16.) He also alleges that he told Defendants Beck, Herbert, and Loonesfoot that he suffered asthma attacks because of the mace in his hair. (*Id.*) But Plaintiff does not allege that he suffered such an attack in the presence of Defendants Beck, Herbert, or Loonesfoot.

Similarly, Plaintiff reports that he felt his sugar was low. (*Id.* ¶¶ 14, 16, 18.) Plaintiff also alleges that he told Defendants Herbert, Beck, Loonesfoot, and John Doe #4 that Plaintiff felt his sugar was low. (*Id.*) But Plaintiff does not allege that he suffered or exhibited any particular symptoms because his sugar was low.

Certainly, asthma and diabetes are serious chronic medical conditions; but, when they are treated, the prisoners suffering those conditions may not display any obvious symptoms that would demonstrate a serious need for immediate treatment. Nonetheless, liberally construing Plaintiff's allegations, and drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff's allegations preclude dismissal of his claims for deliberate indifference to his serious medical needs at this stage of the proceedings.

## C.    First Amendment Retaliation

Plaintiff claims that Defendants Waltanen, Loonesfoot, Herbert, and John Doe #2 violated Plaintiff's First Amendment rights by retaliating against him for engaging in conduct protected by the First Amendment.[9] Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

---

[9] More accurately, Plaintiff includes the word "retaliation" in the identified claims for Defendants Waltanen, Loonesfoot, Herbert, and John Doe #4. (First Am. Compl., ECF No. 3, PageID.38 ¶¶ 19, 20, 23, 26.)

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As explained below, Plaintiff's claim fails at the first step of the *Thaddeus-X* analysis. First, Plaintiff's allegations relating to Defendant Waltanen's involvement in the excessive use of force do not make any mention of protected conduct by Plaintiff, nor do they suggest that Defendant Waltanen was "retaliating" for any conduct by Plaintiff. (First Am. Compl., ECF No. 3, PageID.22, ¶¶ 1–4.) On the contrary, Waltanen's actions are presented as entirely unprovoked. (*Id*.) The same is true for the uses of excessive force described by Plaintiff with regard to Defendants Loonesfoot and John Doe #2. (*Id*. PageID.22–23, ¶¶ 5, 6, 7.)

Plaintiff alleges that Defendant Herbert indicated some retaliatory intent for "what just happened" and "what [Plaintiff] did." (*Id*., PageID.23–24, ¶ 16.) But Plaintiff's allegations make clear that the officers who interacted with Plaintiff while he was in cell #115 were retaliating because they believed Plaintiff had assaulted Defendant Waltanen. (*Id*., PageID.25, ¶ 18.) Assaulting a prison officer clearly is not protected conduct. *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (summarizing Supreme Court cases holding that, although "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea[,]" "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." (internal citations and quotations omitted)); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence.").

Because Plaintiff has failed to allege that he engaged in protected conduct that prompted the adverse actions, he has failed to state a First Amendment retaliation claim on which relief may be granted.

### D.    Supervisory Liability

Plaintiff claims that Defendant Cordono is responsible for his "failure to supervise." (First Am. Compl., ECF No. 3, PageID.37, ¶ 21.) Plaintiff does not allege any facts explaining how Defendant Cordono failed to supervise the other participants during the use of excessive force on August 30, 2024.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has alleged that Defendant Cordono is responsible for his own excessive use of force against Plaintiff. However, Plaintiff does not allege active unconstitutional behavior that relates to Defendant Cordono's supervision of the other Defendants.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official as follows:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999), and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

With regard to Defendant Cordono, Plaintiff alleges only a "failure to supervise." (First Am. Compl., ECF No. 3, PageID.37, ¶ 21.) It is difficult to imagine a more vague or conclusory allegation. Plaintiff fails to allege any facts showing that Defendant Cordono encouraged or condoned the other Defendants' conduct, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. Plaintiff's conclusory allegation of supervisory liability is insufficient to demonstrate that Defendant Cordono was personally responsible for the conduct of the other Defendants. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because this claim against Defendant Cordono is premised on nothing more than respondeat superior liability, Plaintiff fails to state a claim on which relief may be granted.

34

### E.    Intentional Infliction of Emotional Distress

Plaintiff claims that Defendants Beck and Herbert are liable for the state-law tort of intentional infliction of emotional distress. Plaintiff's factual allegations regarding Beck and Herbert read as follows:

> When C/O Herbert made his round the Plaintiff told C/O Herbert, "I need some soap and towels this ma[c]e has my entire body on fire." C/O Herbert replied in an angry tone, "You[ are] not getting S*** from me." C/O Beck approximately 30 minutes later made a round and the Plaintiff told him, "I need some soap, towels, a shower, this ma[c]e has my whole body on fire." C/O Beck replied "You know I can't give you s*** right now after what just happened. It's going to be a couple days of bulls*** for what you did, then things will go back to normal."
>
> The Plaintiff replied, "Is y'all gon[na] feed me? I'm diabetic. I have to eat, or I'll die. C/O Beck said, "w[e wi]ll see." Then [he] grinned.
>
> The Plaintiff shortly after began to attempt to remove the ma[c]e from his hair, but kept having coughing fits and asthma attacks from how packed the ma[c]e was in his hair. Water splashing from the clogged toilet splashed freely making it an even worse experience. Plaintiff informed C/O Herbert [and] C/O Beck that he needed health-care, but all pleads [sic] were ignored.
>
> At approximately 11:00 a.m. C/O Beck and C/O Herbert passed out lunch trays. Plaintiff was standing at the door and C/O Herbert said, "You know you[ are] not eating." Plaintiff replied, "Come on my sugar low I have to eat." Pleads [sic] were ignored.

(First Am. Compl., ECF No. 3, PageID.23–24, ¶¶ 10–11, 13–14 (asterisks added).) Based on Plaintiff's allegations, from the time he was placed in the cell to the time Defendants Beck and Herbert passed out lunch was approximately an hour. (*Id*., PageID.22, ¶ 2; *Id.* PageID.14, ¶ 14.) Plaintiff alleges that he "continued to plead with first shift staff C/Os Beck, Herbert, [and] Loonesfoot . . . to feed him, contact medical for asthma attacks, and allow him to shower to remove ma[c]e that had Plaintiff's body on fire." (*Id*., PageID.25, ¶ 17.) Plaintiff also notes that each of those officers was aware of Plaintiff's diabetic condition because each had escorted Plaintiff to health care to receive insulin treatments. (*Id*.)

As this Court explained in *Hilton v. Mish*, 224 F.Supp.3d 595 (W.D. Mich. 2016):

> The elements of an intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hayley v. Allstate Ins. Co.*, 262 Mich.App. 571, 577, 686 N.W.2d 273, 276 (2004). "The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id*. at 577, 686 N.W.2d at 276–77 (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999)). A defendant may not be held liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *See Lewis v. LeGrow*, 258 Mich.App. 175, 196, 670 N.W.2d 675, 689 (2003).

*Hilton*, 224 F.Supp.3d at 605. Because the Court has concluded that denying Plaintiff meals, a shower, and medical care for his asthma and diabetes may prove to be extreme deprivations that give rise to liability under the Eighth Amendment, the Court will not dismiss Plaintiff's intentional infliction of emotional distress claims against Defendants Beck and Herbert.

## V.    Motion to Compel a Response to the Complaint

Finally, Plaintiff has filed a motion asking the Court to compel Defendants to respond to the complaint. (ECF No. 16.) The Court will deny that motion as premature. The next step in this proceeding will be referral of this action to the Pro Se Prisoner Early Mediation Program.

<u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) The Court will also grant Plaintiff's motion to correct the place of employment of AMF Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, John Doe #2, Herbert, Beck, and John Doe #4. (ECF No. 8.) Plaintiff need not file another amended complaint; instead, the Court will read Plaintiff's first amended complaint (ECF No. 3) to include the AMF address as the place of employment for those eight Defendants. Further, Plaintiff's supplements (ECF Nos. 7, 9, 10, 11, 12, 13, 14, and 18), construed as motions to supplement the first amended complaint, will be denied. The Clerk is directed to strike Plaintiff's supplements (ECF Nos. 7, 9, 10, 11, 12, 13, 14, and 18) from the docket for this case.

Having conducted a preliminary review of the first amended complaint, the Court will exercise its discretion under Rule 21 and will drop Defendants Schroeder, Olivier-Moyale, James, Bolton, Prusi, Hemmila, Van Acker, Hoult, Leach, Sebaly, Allen, John Doe #5, Howie, John Doe Sgt. #1, John Doe #7, Corrections Officer Matt, Corrections Officer Harry, Vrakal, Bomer, Nurkula, Miller, and Fraki as misjoined and dismiss Plaintiff's claims against these Defendants without prejudice.

Moreover, having conducted the preliminary review under the standards of the PLRA, the Court determines that the following claims will be dismissed for failure to state a claim on which relief may be granted: (1) Plaintiff's claims against the remaining Defendants in their respective official capacities; (2) Plaintiff's claims against Defendants Waltanen, Loonesfoot, Herbert, and John Doe #2 for retaliation in violation of the First Amendment; (3) Plaintiff's claims against Defendant Herbert for the excessive use of force; (4) Plaintiff's Eighth Amendment claims against Defendants Herbert, Beck, Loonesfoot, and John Doe #4 for the filthy condition of his cell; and (5) Plaintiff's claims against Defendant Cordono for a failure to supervise. Plaintiff's Eighth Amendment claims against Defendants Waltanen, Loonesfoot, Cordono, John Doe #1, and John Doe #2 for the use of excessive force on August 30, 2024, and Plaintiff's Eighth Amendment claims against Defendants Herbert, Beck, Loonesfort, and John Doe #4 for denying Plaintiff meals, a shower, and medical care on August 30, 2024, remain in the case. Additionally, Plaintiff's state

law tort claims for the intentional infliction of emotional distress against Defendants Herbert and

Beck also remain in the case.

      An order consistent with this opinion will be entered.


Dated:   June 27, 2025                 /s/ Ray Kent                   
                                                    Ray Kent
                                                    United States Magistrate Judge