UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

BRASHARD DELANEY,

Plaintiff,

v.

UNKNOWN WALTANEN et al.,

Defendants.

______________________________/

Case No. 2:24-cv-194

Honorable Ray Kent

**OPINION**

This is a civil rights action brought by Plaintiff Brashard Delaney under 42 U.S.C. § 1983. This matter is before the Court on a motion for summary judgment filed by the remaining defendants. (ECF No. 37.) For the reasons set forth below, the Court will grant the motion for summary judgment. Because that will resolve all claims against all parties, the Court will dismiss this action with prejudice.

**Discussion**

**I. Factual and Procedural Background**

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility in Ionia, Michigan. He is presently serving a consecutive sentence string with an earliest release date of May 13, 2028, and a discharge date of July 15, 2037. Plaintiff's sentences were imposed following Plaintiff's entry of guilty pleas to one count of assault with intent to do great bodily harm and felony firearm in Lenawee County Circuit Court and one count of assault of a prison employee in Baraga County Circuit Court. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/search (enter First Name

"Brashard," Last Name "Delaney," select Search, select Offender Number 671563) (last visited Oct. 6, 2026).[1]

The events about which he complains occurred at the Baraga Correctional Facility (AMF), in Baraga, Michigan, on August 30, 2024. Plaintiff sues the following AMF personnel: Corrections Officers Michael Waltanen, Christopher Loonsfoot, Parker Wilson (identified by Plaintiff as John Doe #1), Michael Fraki (identified by Plaintiff as John Doe #2), Brian Beck, and Christian Hebert; Sergeant Joseph Coronado; and Prison Counselor Logan Frantti (identified by Plaintiff as John Doe #4).

In Plaintiff's unverified first amended complaint, he avers that, on August 30, 2024, at approximately 9:45 a.m. he was involved in a "physical altercation" with Corrections Officer Waltanen. (ECF No. 3, PageID.22.) As other officers ran into the unit in response to the altercation, Plaintiff retreated approximately six feet away from Waltanen and put his hands in the air with his back to Waltanen. Defendant Waltanen, without warning, "tasered" Plaintiff in the back. (*Id.*) Defendant Waltanen then ran to Plaintiff, expressed his intention to kill Plaintiff, and then grabbed Plaintiff by his dreadlocks and pounded Plaintiff's head into the ground. (*Id.*) Defendant Waltanen simultaneously kneed Plaintiff in the ribs as he repeatedly yelled that he would kill Plaintiff. (*Id.*)

Defendants Loonsfoot, Coronado, and Wilson, then joined the attack. (*Id.*) They punched and kneed Plaintiff while he remained prone on his stomach on the floor. (*Id.*) Plaintiff claims that he was neither resisting nor able to resist; nonetheless, to provide cover for their actions,

[1] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

Defendants yelled, “stop resisting.” (*Id*.) Plaintiff was shot in the back with tasers two more times. (*Id*.) Then Defendant Fraki sprayed an entire can of mace on Plaintiff’s face, eyes, and hair. (*Id*.)

Thereafter, Loonsfoot, Coronado, Waltanen, and Wilson placed their full body weight on Plaintiff’s back, buttocks, and thighs until Plaintiff yelled, “I can’t breathe.” (*Id*., PageID.23.) Plaintiff temporarily blacked out. (*Id*.)

Plaintiff was then placed in a restraint chair and taken to unit 2 segregation by Loonsfoot, Coronado, and Wilson. (*Id*., PageID.4.) All but Defendant Wilson left. (*Id*.) Wilson punched Plaintiff three times in the jaw and told Plaintiff “they” were going to kill Plaintiff. (*Id*.) Non-party Assistant Resident Unit Supervisor (ARUS) Walowski abruptly entered the room with a video recorder and the beating ended. (*Id*.) Non-party Nurse Skinnerup removed three taser prongs from Plaintiff’s back. (*Id*.)

Plaintiff alleges that he was put back in the restraint chair and led to A-wing cell #115. (*Id*.) The cell was filthy, with feces clogged in the toilet, and smelled awful. (*Id*.) The cell did not have soap or towels. (*Id*.)

Defendant Hebert made rounds in the unit. (*Id*.) Plaintiff advised Defendant Hebert that Plaintiff needed soap and towels because the mace had Plaintiff’s “entire body on fire.” (*Id*.) Defendant Herbert told Plaintiff that Defendant Hebert would not provide Plaintiff with anything. (*Id*.)

Thirty minutes later, Defendant Beck made rounds. (*Id*.) Plaintiff also told Defendant Beck that Plaintiff needed soap, towels, and a shower because of the mace. (*Id*.) Defendant Beck advised Plaintiff that because of Plaintiff’s assault he was going to have to go through “a couple days of bull s***” but, thereafter, “things will go back to normal.” (*Id*.,

PageID.23–24 (asterisks added).) Plaintiff also asked Defendant Beck for food noting that Plaintiff was diabetic. (*Id.*, PageID.24.) Defendant Beck offered the following response: "We'll see." (*Id.*)

Plaintiff began trying to remove the mace from his hair. (*Id.*) Plaintiff told Defendants Beck and Hebert that Plaintiff needed healthcare because the mace was causing asthma attacks. (*Id.*) Plaintiff's request for help was ignored. (*Id.*)

At 11:00 a.m., Defendants Beck and Hebert passed out lunch trays. (*Id.*) Defendant Hebert advised Plaintiff that he would not be eating. (*Id.*) Plaintiff advised Defendant Hebert that his blood sugar was low and that Plaintiff had to eat. (*Id.*) Plaintiff's request for help was ignored. (*Id.*)

Defendant Loonsfoot made a round. (*Id.*) Plaintiff advised Defendant Loonsfoot that Defendant Hebert had not provided Plaintiff with food and that his blood sugar was low. (*Id.*, PageID.24–25.) Plaintiff also advised Defendant Loonsfoot that Plaintiff needed soap and a shower to clean off the mace that was causing asthma attacks. (*Id.*, PageID.25.)

Between 4:30 p.m. and 5:00 p.m., Defendant Frantti refused to feed Plaintiff dinner. (*Id.*) Defendant Frantti advised Plaintiff that he was about to "ride-out" and that his new facility would feed him. (*Id.*) Plaintiff complained that his blood sugar was low and he felt dizzy. Defendant Frantti told Plaintiff to "stop assaulting officers [and] you'll eat all your trays." (*Id.*)

Plaintiff was in cell #115 from 10:00 a.m. to 8:30 p.m. without food, soap, towels, a shower, or treatment for his asthma attacks. (*Id.*) At 8:30 p.m., transportation officers arrived to transport Plaintiff to the Marquette Branch Prison (MBP) in Marquette, Michigan. (*Id.*)

Based on these allegations, as well as allegations against many additional defendants from MBP, Plaintiff raised several claims. By opinion and order entered June 27, 2025, the Court dismissed all of Plaintiff's claims except the following: Plaintiff's Eighth Amendment

claims against Defendants Waltanen, Loonsfoot, Coronado, Wilson, and Fraki for the use of excessive force on August 30, 2024; Plaintiff's Eighth Amendment claims against Defendants Hebert, Beck, Loonsfoot, and Frantti for denying Plaintiff meals, a shower, and medical care on August 30, 2024; and Plaintiff's state law tort claim for the intentional infliction of emotional distress against Defendants Hebert and Beck.

Defendants have moved for summary judgment. Plaintiff has filed a response. Defendants have filed a reply. After Defendants submitted their reply, Plaintiff sought leave to file a sur-reply brief. (ECF No. 48).

## II. Sur-reply Brief

The Court's local rules contemplate that briefing on dispositive motions will include an initial supporting brief, an opposing brief in response, and a reply brief. W.D.Mich. LCivR 7.2(c). Although the Court may permit or require additional briefing, it is rarely necessary. That is the case here. Accordingly, the Court will deny Plaintiff's motion to file a sur-reply brief. (ECF No. 48.)

## III. Summary Judgment

### A. Standard

Defendants contend they are entitled to summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting all of that together, Rule 56 asks 'whether the

evidence is so one-sided that one party must prevail as a matter of law.'" *DeVooght v. City of Warren, Mich.*, 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted).

### B. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff failed to exhaust his available administrative remedies before filing this action. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if

the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Prisoner/Parolee Grievances Policy Directive ("PD") 03.02.130 (effective September 25, 2023).[2] (ECF No. 38-2, PageID.337–344.) A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then

[2] The Court takes judicial notice of the content of the MDOC policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). The Court notes that a new Prisoner/Parolee Grievances policy directive was adopted on October 21, 2024. (ECF No. 47-2, PageID.419–426.) That policy would have been in effect for part of the period at issue. There are no differences between the policy directives that are material to the issues before the Court.

the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

Defendants point out that Plaintiff failed to pursue any grievance related to the August 30, 2024, incidents at AMF through the third step of the grievance process before he filed his complaint. Plaintiff filed his initial complaint on October 11, 2024.[3] The Court received it on November 13, 2024. That complaint included Plaintiff's claims arising on August 30, 2024, against AMF Defendants Waltanen, Loonsfoot, Coronado, Wilson, and Fraki, up to the point in time when ARUS Walowski interrupted Defendant Wilson's abuse of Plaintiff in unit 2 segregation. Plaintiff

[3] Under the prison mailbox rule, a prisoner's court paper is deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted). Here, plaintiff signed his complaint on October 11, 2024. (Compl., ECF No. 1, PageID.7).

added the AMF claims that accrued after that point in his first amended complaint. Plaintiff filed his first amended complaint on November 15, 2024. (Am. Compl., ECF No. 3, PageID.39.)

The only grievances that Plaintiff reports he filed regarding the August 30, 2024, incidents at AMF were the following:

> On September 4th, 2024, between 8-10am Plaintiff gave [MBP] R.U.M. Moyale Step I grievance on August 30th, 2024 incident in a sealed envelope addressed to Inspector Mike Leach. [attached to Plaintiff's first amended complaint (ECF No. 3-2, PageID.44–46)]
>
> On September 19th, 2024 the Plaintiff gave RUM Moyale the same Step I grievance again during legal mail rounds between 8-10 am in a sealed envelope addressed directly to Grievance Coordinator Q. Bolton. [attached to Plaintiff's first amended complaint (ECF No. 3-3, PageID.47–48)]
>
> On September 24th, 2024 the Plaintiff again gave R.U.M. Moyale/Olivier the same grievance(s) from August 30th, 2024 incident between 8-10 am during legal mail rounds addressed to Grievance Coordinator Q. Bolton, Director's Office in Lansing, and Keith Barber of the Ombudsman Office. [attached to Plaintiff's first amended complaint (ECF No. 3-4 to 3-6, PageID.49–55)]
>
> On October 8th, 2024 the Plaintiff gave R.U.M. Moyale the same grievance from 8/30/24 incident during legal mail round addressed to Warden Schroeder. He also included a grievance for failure to respond to grievances on Grievance Coordinator Q. Bolton. The latter was . . . processed the former was not acknowledged at all. [attached to Plaintiff's first amended complaint (ECF No. 3-7, PageID.56–57; ECF No. 3-11, PageID.64–72]
>
> On October 24th, 2024 Plaintiff turned in a golden rod copy of incident from August 30th, 2024 to R.U.M. Moyale at 8-10 am legal mail rounds.

(Am. Compl., ECF No. 3, PageID.28–32; *see also* Delaney Decl., ECF No. 44, PageID.391–393, ¶¶ 4–16.)

Whether or not the various Step I grievances referenced above that relate to the AMF incidents were properly filed, none of them were pursued through the three-step process outlined in the Prisoner/Parolee Grievances Policy Directive before Plaintiff filed his initial or first amended complaint. Plaintiff declares that the grievances must have been destroyed; but that

appears to be rank speculation on his part. He alleges no facts indicating how he gained the personal knowledge to support that verified declaration.

Moreover, even if the Step I grievances had been destroyed rather than processed and responded to, the administrative grievance process contemplates that the process continues—even in the absence of a response. Indeed, the continuation of the process is essential to ferreting out potential procedural problems at Step I. *See* MDOC PD 03.02.130, ¶ JJ ("If a pre-Step II procedural error is identified at Step II, the Step II appeal shall not be answered and the Step I response shall be returned to Step I for an amended response to correct the procedural error. All rights and timeframes for appeal of the amended Step I grievance shall be reset.").[4] Plaintiff, rather than timely pursuing his Step II appeal when he did not receive a timely Step I response, persisted in resending identical Step I grievance forms to the wrong people at the wrong facility.[5]

Plaintiff is no stranger to the MDOC administrative grievance process. He has used it many times all the way through the third step. *See* (Mayo Aff., ECF No. 47-5, PageID.438–440); Nelson Aff., *Delaney v. Allen*, No. 2:24-cv-182 (W.D. Mich.) (ECF No. 21-3, PageID.116–123).[6] Indeed, his frequent use of the process from beginning to end essentially undercuts his claim that it was unavailable at either AMF or MBP.

In summary, Plaintiff did not properly exhaust a grievance against Defendants regarding the matters at issue in this lawsuit. Accordingly, the Court concludes that there are no

[4] A parallel provision exists for Step III. *See* MDOC PD 03.02.130 ¶¶ NN.

[5] Defendants submitted a sworn affidavit from Pat Mayo, grievance coordinator at AMF. Coordinator Mayo explains that under the MDOC Prisoner/Parolee Grievance PD, "a Step I grievance must be filed at the facility where the events being grieved allegedly occurred." (Mayo Aff., ECF No. 47-5, PageID.438.) Plaintiff does not contest the existence of the requirement nor does he explain why he ignored it.

[6] Plaintiff makes specific references to his MBP grievances and *Delaney v. Allen*, No. 2:24-cv-182 (W.D. Mich.) in his supplemental declaration in this action. (Delaney Suppl. Decl., ECF No. 45.)

genuine issues of material fact with regard to whether Plaintiff properly exhausted his administrative remedies before filing either his initial or his first amended complaint. He did not. Defendants are entitled to judgment as a matter of law. Accordingly, Plaintiff's § 1983 claims against Defendants will be dismissed with prejudice.

## IV. State Law Claims

Dismissal of Plaintiff's federal claims still leaves Plaintiff's state-law claims for intentional infliction of emotional distress against Defendants Hebert and Beck. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claim against Defendants will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law "intentional infliction of emotional distress" claims against Defendants Hebert and Beck. The Court will dismiss those claims without prejudice.

## Conclusion

The Court will deny Plaintiff's motion to file a sur-reply brief. For the reasons stated above, the Court will grant Defendants' motion for summary judgment. The Court will dismiss Plaintiff's federal § 1983 claims against the remaining Defendants with prejudice for failure to exhaust administrative remedies. The Court will dismiss Plaintiff's claims against Defendants Hebert and Beck for intentional infliction of emotional distress because the Court declines to exercise supplemental jurisdiction over those state-law claims.

The Court granted Plaintiff leave to proceed *in forma pauperis*. For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

The Court will enter an order and judgment consistent with this opinion.

Dated: October 13, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge